# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

United States of America

v.

Symin Sampson

CASE NUMBER:

CRIMINAL COMPLAINT

19-5332mJ

I, the undersigned complainant, state under oath that the following is true and correct to the best of my knowledge and belief:

### COUNT 1

On or about August 5, 2019, in the District of Arizona, on the Salt River Indian Reservation, Indian Country, the defendant, SYMIN SAMPSON, an Indian, did intentionally and knowingly assault the victim, E.M., with a dangerous weapon, that is, a firearm, with the intent to do bodily harm. In violation of Title 18, United States Code, Sections 113(a)(3) and 1153.

### COUNT 2

On or about August 5, 2019, in the District of Arizona, on the Salt River Indian Reservation, Indian Country, the defendant, SYMIN SAMPSON, did knowingly use, carry, brandish and discharge a firearm during and in relation to a crime of violence and did knowingly possess and discharge a firearm in furtherance of a crime of violence, that is, Assault with a Dangerous Weapon as alleged in Count 1, a felony crime prosecutable in a Court of the United States. In violation of Title 18, United States Code, Section 924(c).

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts: **SEE ATTACHED AFFIDAVIT.**

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

REVIEWED BY: s/AUSA Kyra Goddard for AUSA Robert I. Brooks

__X__ Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct.

Officer Brian Hermes, TFO, FBI
Complainant's Name and Title

Complainant's Signature       Date 8/12/19

Date/Time: Aug. 12, 2019

Phoenix, Arizona
City and State

Honorable Deborah M. Fine, U.S. Magistrate Judge
Name & Title of Judicial Office

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brian K. Hermes, being duly sworn, depose and state as follows:

### INTRODUCTION

1. The facts of this case, as more fully detailed herein, are that on August 5, 2019, at approximately 12:00 p.m., SYMIN SAMPSON, an Indian, committed the crimes of Aggravated Assault with a Dangerous Weapon in violation of Title 18 U.S.C. Section 113(a)(3) and Possession/Use of a Firearm in a Crime of Violence in violation of Title 18 U.S.C. Section 924(c), when he shot E.M., an Indian, multiple times with a handgun. This crime happened on the Salt River Indian Reservation.

### PRELIMINARY BACKGROUND INFORMATION

2. I am a certified peace officer employed with the Mesa Police Department (MPD) since January of 2002. I have been assigned as a Detective with the Mesa Police Gang Unit since January of 2008. In 2016, I joined the FBI Safe Trails Task Force (STTF). My duties on the gang unit include investigating gang related crimes that occur within the City of Mesa and State of Arizona. I have received training at the MPD Academy and have attended numerous investigative schools and trainings over my career, specifically geared to the investigation of violent crime, gang crimes, and pro-active policing.

3. In my current assignment as a task force officer (TFO) with the FBI STTF, I primarily investigate gang related violent crimes that occur on the Indian Reservations and in communities in the Phoenix area. I am deputized with Title 18 authority by the United States Marshal Service and am sponsored by the FBI STTF. I am authorized to investigate violations of the laws of the United States, collect evidence in cases in which the United States is or may be a party of interest, and execute warrants issued under the authority of the United States.

4. In the course of my official duties, I am charged with the investigation of crimes occurring on Salt River Indian Community, within the District of Arizona. Based on your affiant's training and experience, I know that the Salt River Indian Community is a federally recognized Indian tribe. In this regard, the following information was developed

1

by me and/or provided to me by other law enforcement officers, and other persons, in connection with the FBI investigation. The information contained in this affidavit is from my personal knowledge, as well as from information provided to your affiant by other law enforcement officers and/or witnesses including those listed herein. Due to the fact that this affidavit is being made to establish probable cause, your affiant has not listed each and every fact known regarding the investigation of this incident.

**PERTINENT FEDERAL CRIMINAL STATUTES**

6. This investigation concerns alleged violations of Aggravated Assault with a Dangerous Weapon in violation of Title 18 U.S.C. Section 113(a)(3) and Possession/Use of a Firearm in a Crime of Violence in violation of Title 18 U.S.C. Section 924(c).

7. Jurisdiction for these crimes is based on Title 18 U.S.C. Section 1153 and is present in this case because the crime happened on the Salt River Indian Reservation and both the victim, E.M., and the suspect, SYMIN SAMPSON are enrolled members of the Salt River Pima-Maricopa Indian Community.

**DETAILS OF THE INVESTIGATION**

8. On August 5, 2019, at approximately 12:05 p.m., the reporting party, D.M., called 911 to report an emergency to the Salt River Police Department. D.M. reported that her son, E.M., was shot by SYMIN SAMPSON at 2104 North Extension, Scottsdale, AZ. E.M. and SYMIN SAMPSON both live on the property at that address, but reside in different residential structures.

9. 2104 N Extension, Scottsdale, AZ, is a residential property that encompasses two separate residential structures. The main structure of the property is approximately three thousand square feet and is occupied by SYMIN SAMPSON. The second residential structure is just south of the main structure and is approximately fifteen hundred square feet; the smaller structure is occupied by E.M.

10. Salt River Patrol Officers arrived at 2104 North Extension at approximately 12:15 p.m. on August 5, 2019. The officers observed live ammunition, blood spatter, and a spent shell casing on the property grounds.

11. At approximately 12:20 p.m., Salt River Police Officer Aguirre reported E.M. was at the Scottsdale Osborne Hospital being treated for two gunshot wounds. E.M. was struck twice, once in the left chest area and once in the right elbow. Hospital staff decided to leave the projectiles inside of E.M. pending follow up.

12. At approximately 3:00 p.m., your affiant arrived at the Scottsdale Osborne Hospital to interview E.M. E.M. stated that earlier that day, he was in his driveway working on his truck when SYMIN SAMPSON walked over carrying a black handgun with an extended magazine in it. SAMPSON was playing with the gun, loading and unloading it while dropping ammunition on the ground. SAMPSON asked E.M. if he would go into E.M.'s house with him; at this point, E.M. said he feared for his safety and declined to go with SAMPSON.

13. After his interaction with SAMPSON, E.M. crawled underneath his truck, which was parked in the driveway next to his front door, to continue working on the truck. While underneath his truck, he heard a gunshot and felt something strike him. E.M. looked towards the sound of the gunshot and saw SAMPSON sitting on the couch inside E.M.'s house pointing the handgun at E.M. Fearing for his safety, E.M. got up and ran away. SAMPSON chased after E.M. and shot at him again, striking him a second time.

14. E.M. ran to a church south of his house and called his family for help. Eventually, D.O., E.M.'s sister, arrived on scene and picked him up. At first E.M. was too scared to go to the hospital and had D.O. take him to her house. While at D.O.'s house, E.M. feared that his wounds were life threatening and called his ex-girlfriend and mother of his children, S.M.S., to come pick him up and take him to the hospital. S.M.S. transported E.M. to the Scottsdale Osborne Hospital. While on their way to the hospital, E.M. told S.M.S. that SAMPSON shot him.

15. At the hospital, I also interviewed S.M.S. S.M.S. confirmed that while they were driving to the hospital, E.M. told her SAMPSON shot him. After dropping E.M. off at the hospital, S.M.S. went back to 2104 North Extension to confront SAMPSON. At the residence, S.M.S. knocked on SAMPSON's door and asked him why he shot E.M.

3

SAMPSON responded "he's lucky I didn't get him in the chest." SAMPSON then exited the house and got into a taxi to leave the area. S.M.S. also told me that E.M.'s friends, D.S. and D.R., may have been present during the shooting.

16. Salt River Police Officer Medinaku #308 authored and obtained a Salt River tribal warrant for premises 2104 N Extension. During the execution of the search warrant, several items of evidence were located.

17. In the driveway just east of E.M.'s house, blood was located on the ground along with a spent shell casing and one live round of ammunition. In the driveway, bullet fragments were located underneath the truck where E.M. was working. A single bullet hole was also located in the passenger side front bumper of E.M's truck. A single live round of ammunition was found inside E.M's residence, where SAMPSON was observed shooting at E.M.

18. Inside the main structure of SAMPSON's house, in a room known to be SAMPSON's, law enforcement found ammunition similar to the ammunition found near E.M.'s residence. A pill bottle and notebook paper with SAMPSON's name on it were also located and seized in the same room. Inside the pill bottle was an unknown crystal like substance.

19. On August 7, 2019, D.R. and D.S. were located at 1035 West Elena, Mesa, AZ. When interviewed, D.R. stated that he was at E.M.'s house on the day E.M. was shot but said he was in the bathroom with his girlfriend, D.S. While inside the bathroom, they heard arguing and the sound of someone playing with a handgun. Moments later, they heard a gun shot from inside house. Fearing for their safety, they stayed quiet and hid in the bathroom. They subsequently heard a second gunshot.

20. D.S. was also interviewed on August 7, 2019 and stated that she was at E.M.'s house the day of the shooting. She said was in the bathroom with D.R. when she heard E.M. talking to another person. She heard a gunshot and believed it was fired from inside the house. D.S. and D.R. hid in the bathroom. After about fifteen minutes, D.S. received a phone call from E.M. stating they needed to leave the house and that SAMPSON shot him. When

4

D.S. and D.R. exited the bathroom, they did not see E.M. or SAMPSON at the house. D.S. told law enforcement she had seen SAMPSON a week prior with what she described as a small black handgun.

21.   On August 10, 2019, SYMIN SAMPSON was located at 1307 East Main St, Mesa, AZ. During a post Miranda interview, SAMPSON requested to speak with an attorney. No further questions were asked.

## CONCLUSION

Based on the foregoing, I believe that there is probable cause the defendant committed the crimes of Aggravated Assault with a Dangerous Weapon in violation of Title 18 U.S.C. Section 113a3 and Possession/Use of a Firearm in a Crime of Violence in violation of Title 18 U.S.C. Section 924(c),

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____ 8/12/19
Task Force Officer Brian Hermes
Federal Bureau of Investigation

Subscribed and sworn to this 12th day of August, 2019.

_____
HONORABLE DEBORAH M. FINE
United States Magistrate Judge

5